LYON & SONS, INC., v. N. C. STATE BOARD OF EDUCATION AND/OR SAMPSON COUNTY BOARD OF EDUCATION.

(Filed 12 June, 1953.)

**1. State § 3a—**

The State Tort Claims Act will be construed to effectuate its purpose to waive the sovereign immunity of the State in those instances in which injury is inflicted through the negligence of a State employee and the injured person is not guilty of contributory negligence, giving the injured

party the same right to sue as any other litigant, and the Act will not be given a strict or narrow construction which would defeat this purpose. G.S. 143-291 *et seq.*

**2. Subrogation § 1—**

The equitable principal of subrogation will be broadly applied to compel a party primarily liable for an obligation to reimburse the person who has been compelled to pay the debt and who is, therefore, not a mere volunteer or intruder.

**3. Insurance § 51: Parties § 1—**

An insured who has been paid a part of the damage to his car by insurer can maintain an action in his own name against the tort-feasor for the entire damage, but insurer is a proper party and may be joined in the discretion of the court.

**4. State § 3a—**

In this proceeding under the State Tort Claims Act, the Industrial Commission found that plaintiff's car was damaged as a result of the negligence of the driver of a State school bus, that plaintiff was not guilty of contributory negligence, and that plaintiff had been paid a part of the damage under the provisions of a fifty dollar deductible collision policy. *Held:* Plaintiff is entitled to recover the total damage to his car for the benefit of himself and his insurer, and the State is not entitled to a deduction from the recovery of the amount paid by insurer.

APPEAL by plaintiff from *Morris, J.,* March Civil Term, 1953, of DURHAM.

This was a proceeding instituted by the plaintiff before the North Carolina Industrial Commission under Ch. 1059, Session Laws of North Carolina, 1951, codified as G.S. 143-291 *et seq.*—captioned An Act to Authorize the North Carolina Industrial Commission to Hear and Determine Tort Claims Against State Departments and Agencies—for an award of $121.55 for damage to its automobile allegedly caused by the actionable negligence of the defendants, without contributory negligence on the part of the claimant.

The plaintiff, pursuant to Sec. 9 of the Act, filed an affidavit with the Industrial Commission setting forth the information required.

By consent the proceeding was heard in Durham before Commissioner J. W. Bean. There was no controversy about the facts. Upon competent evidence the Commission found facts, which are summarized as follows: (1) Bobby Porter, an employee of the State Board of Education, an agency of the State, was operating a State owned school bus in Sampson County on a public road; (2) while acting within the scope of his employment he negligently backed the bus into plaintiff's automobile, and such negligence was the proximate cause of $121.55 damage to the automobile; (3) there was no contributory negligence on plaintiff's part; (4) the Southern Fire Ins. Co. of Durham had issued a liability insurance policy

to the plaintiff covering its automobile, with a $50.00 deductible provision, and pursuant to the policy paid the plaintiff $71.55, leaving a net loss to the plaintiff of $50.00. The Hearing Commissioner awarded the plaintiff $50.00 as damages. There was an appeal by the plaintiff to the full Commission. The full Commission stated "that plaintiff's appeal is grounded upon the contention that it is entitled to recover the full sum of $121.55—$71.55 of which belongs to Southern Fire Insurance Co. in satisfaction of its subrogated rights." In the hearing before the full Commission it was stipulated that the plaintiff should introduce in evidence, to be made a part of the record, (1) Southern Fire Ins. Co. Policy #A42107, (2) Subrogation receipt executed by plaintiff to the carrier and proof of loss. The full Commission affirmed the order of the Hearing Commissioner. Upon appeal to the Superior Court by the plaintiff the order of the full Commission was affirmed.

From the judgment signed, the plaintiff appeals, assigning error.

*Henry Bane for plaintiff, appellant.*

*Attorney-General McMullan, Assistant Attorney-General Love, and Gerald F. White, Member of Staff, for the defendants, appellees.*

PARKER, J. This question is presented for our decision: Does the right of subrogation exist under the provisions of Ch. 1059, Session Laws N. C., 1951, codified as G.S. 143-291 *et seq.,* and known as Tort Claims against State Departments and Agencies? The exact question presented is of first impression in our State.

The pertinent parts of Ch. 1059, N. C. Session Laws, 1951, are as follows: Sec. 1: The State Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against the State Board of Education, the State Highway & Public Works Commission, and all other departments, institutions, and agencies of the State. The Industrial Commission shall determine whether or not each individual claim arose as a result of a negligent act of a State employee while acting within the scope of his employment and without contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted. If the Commission finds that there was such negligence on the part of a State employee while acting within the scope of his employment proximately causing the injury and no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted, the Commission shall determine the amount of damages the claimant is entitled to be paid, including medical and other expenses, and direct the payment of such damages by the department, institution or agency concerned but the damages awarded shall not exceed $8,000.00. Sec. 3 provides for an appeal from the full Commission to the Superior

Court, and from the Superior Court to the Supreme Court: such appeal shall be for errors of law only, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them. Sec. 11 reads as follows: "All claims against any and all State departments, institutions, and agencies, except the claims enumerated in Section 13 of this Act, shall be forever barred unless a claim be filed with the Industrial Commission within two years after the accident giving rise to the injury and damage, and if death results from the accident, the claim for wrongful death shall be forever barred unless a claim be filed by the personal representative with the Industrial Commission within two years after such death." Sec. 13 reads as follows: "The following claims against the various departments, institutions, and agencies of the State indicated below shall be heard and determined by the Industrial Commission as provided in this Act, and each claimant upon request shall furnish the Industrial Commission the information provided for in Section 9 of this Act, as follows." Then follows a list of 276 claims. The 194th claim listed is plaintiff's claim, and is as follows:

| CLAIMANT | UNIT | COUNTY | AMOUNT |
|----------|------|--------|--------|
| Lyon & Sons, Inc. | Sampson Co. Bd. of Ed. | Sampson | $121.55 |

Some 33 of these claims are for less than $25.00. The claims range in amounts from $3.00, $11.06, $14.03, $69.86 to $25,000.00.

It is frequently stated that while the decisions are not uniform, most courts hold that statutes waiving the Government's immunity from suit should be strictly construed. 49 Am. Jur., p. 314; 81 C.J.S., Statutes, p. 1306. However, the current trend of legislative policy and of judicial thought is toward the abandonment of the monarchistic doctrine of governmental immunity, as exemplified, for instance, in Tort Claims Acts enacted by the Congress and the Legislatures of the various States. We think that the legislative attitude in passing a Tort Claims Act, or waiving a State's immunity from suit, is more accurately reflected by *Cardozo, J.,* in *Anderson v. John L. Hayes Constr. Co.,* 243 N.Y. 140, 147, 153 N.E. 28 (quoted with approval in *U. S. v. Aetna Cas. & Sur. Co.,* 338 U.S. 366, 94 L. Ed. 171): "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced." The Washington & Lee Law Review, Vol. VI, p. 116, says: "The opinion of *Justice Cardozo* in *Anderson v. John L. Hayes Construction Co.* properly states the general rule to be applied to those cases involving the construction of a waiver of immunity statute" and goes on to quote the language of *Cardozo, J.,* quoted above.

When a State consents to be sued or waives its governmental immunity, it occupies the same position as any other litigant, and a plaintiff has the

same right that he would have to sue an ordinary person. The State in such circumstances is not entitled to special privileges. 81 C.J.S., States, p. 1310, and cases cited; *State v. Stanolind Oil & Gas Co.,* Tex. Civ. App., 190 S.W. 2d 510; *Com. v. Bowman,* 267 Ky. 50, 100 S.W. 2d 801; *Murrain v. Wilson Line,* 59 N.Y.S. 750, 270 App. Div. 372, affirmed 296 N.Y. 845, 72 N.E. 2d 29, re-argument denied 296 N.Y. 995, 73 N.E. 2d 572.

The Federal Tort Claims Act—formerly 28 U.S.C., sec. 931, which is now divided and, with immaterial changes, appears in 28 U.S.C., secs. 1346 (b) and 2674—provides in pertinent part that ". . . the United States District Court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred . . . sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only . . . on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person would be liable to the plaintiff for such damage, loss, injury or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this chapter, the United States shall be liable in respect of such claims to the same claimants, in the same manner and to the same extent as a private individual under like circumstances."

Courts of Appeals in seven circuits have upheld the right of subrogees to sue under the Tort Claims Act. *State Farm Mut. Liability Ins. Co. v. United States* (1st Cir.), 172 F. 2d 737 (1949); *Aetna Casualty & Surety Co. v. United States* (2d Cir.), 170 F. 2d 469 (1948); *Yorkshire Ins. Co. v. United States* (3rd Cir.), 171 F. 2d 374 (1948); *United States v. South Carolina State Highway Dept.* (4th Cir.), 171 F. 2d 893 (1948); *Old Colony Ins. Co. v. United States* (6th Cir.), 168 F. 2d 931 (1948); *National American Fire Ins. Co. v. United States* (9th Cir.), 171 F. 2d 206 (1948); *United States v. Chicago, R. I. & P. R. Co.* (C.A. 10th Okla.), 171 F. 2d 377 (1949). The Court of Appeals for the Fifth Circuit reached a contrary conclusion, *United States v. Hill,* 171 F. 2d 404, *Hutcheson, J.,* dissenting. Re-argument was ordered before the full bench and, upon reconsideration, the original opinion was modified, 174 F. 2d 61, *Hutcheson, J.,* concurring in the result "as in substantial accordance with the views the dissent expressed."

In discussing the word "claimant" under the Federal Tort Claims Act the Court said in *Old Colony Ins. Co. v. United States, supra:* "The Act does not limit the meaning of the word 'claimant' to one who has sustained damage to his property and we are not justified in reading such limitation into it . . . to do so would be tantamount to amendment by us of

the statute, a function which of course is not ours. . . . If Congress had intended to exclude subrogees from the benefits of the Act it would readily have excluded them in the list of the twelve specified exemptions." In *Spelar v. United States,* 171 F. 2d 208, in speaking of the Federal Tort Claims Act the Court said: "When after many years of discussion and debate Congress has at length established a general policy of Governmental generosity toward tort claimants, it would seem that that policy should not be set aside or hampered by a niggardly construction based on formal rules made obsolete by the very purpose of the Act itself." In *Aetna Casualty & Surety Co. v. United States, supra,* the Court stated: "Defendant's arguments, in effect, rest on the following basis: (1) The United States enjoys immunity from suit without its consent . . . (2) This doctrine . . . is so important and stubborn that any consent given by the United States (as a sort of monarch) must be construed in as niggardly fashion as possible." The Court further said: "We cannot accept this narrow interpretation of the Act." In *State Farm Mut. Liability Ins. Co. v. United States, supra,* the Court said: "Extended discussion would be superfluous in view of the numerous recent decisions in other circuits adverse to contentions of the Government for a narrow interpretation of the Federal Tort Claims Act." Citing numerous Federal cases.

"Transfers by subrogation of claims against the United States are upheld by most courts. Subrogation to tort claims against the United States which can now be asserted under the Federal Tort Claims Act are generally considered to be transfers by operation of law and so not within the prohibition of the Federal Anti-Assignment Statute." 12 A.L.R. 2d Anno. 480, where cases are cited.

In *United States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 94 L. Ed. 171 (1949), the Supreme Court of the United States has laid at rest the diversity of opinion among some of the lower courts as to the application of the Federal Tort Claims Act. The Supreme Court said this important question was presented under the Federal Tort Claims Act: "May an insurance company bring suit in its own name against the United States upon a claim to which it has become subrogated by payment to an insured who would have been able to bring such an action?" The Court answered the question Yes, notwithstanding the anti-assignments statute (31 U.S.C., sec. 203), which invalidates all transfers and assignments of any claim upon the United States, because assignments by operation of law are not within the prohibition of the anti-assignment statutes, as the anti-assignment statutes prohibit voluntary assignments of claims. It was also held that although either the insurer or the insured may sue the United States where the insurer has paid to the insured only part of a claim upon which the latter is able to bring action under the

Federal Tort Claims Act, the United States, upon timely motion, may compel their joinder; both are necessary parties, though not indispensable parties. It was also held that the doctrine that statutes waiving sovereign immunity must be strictly construed is not applicable to the Federal Tort Claims Act.

The South Carolina Court in *United States Casualty Co. v. State Highway Dept.,* 155 S.C. 77, 151 S.E. 887 (1930), arrived at a different conclusion. A South Carolina statute, 35 St. at Large, p. 2055, enacted 10 March, 1928, provided: "Any person, firm or corporation who may suffer injury to his or her person or damage to his, her or its property by reason of a defect in any state highway or by reason of the negligent repair of any state highway, or by reason of the negligent operation of any vehicle or motor vehicle in charge of the State Highway Department while said vehicle or motor vehicle is actually engaged in the construction or repair of any of the said highways, may bring suit against the State Highway Department." So far as the question we have under consideration is concerned the South Carolina Court in this case decided two things in sustaining a demurrer to the complaint. First, that the complaint did not show that the claim for injuries from defects in the highway was filed before the commencement of the suit, as required by the South Carolina statute. Second, that a surety company settling with insured for damages occasioned by defects in the state highway cannot sué the State Highway Department under the theory of subrogation under the statute quoted above. The Court cited no authority to sustain its opinion that the right of subrogation did not exist under the statute. *Cothran, J.,* wrote an opinion concurring in the result that the demurrer should have been sustained as the claim was not filed before the commencement of suit, but stated that it should "be declared as the law that an insurance company which pays damages for an injury to a car, caused by the neglect of the State Highway Department, is subrogated to the rights of the owner against the department." *Cothran, J.,* further used this language: "But it is insisted that, because the act does not give the assignee of a claim by the owner against the department the right to sue, under the rule of strict construction, he does not come within its protection. I think that this is an exceedingly narrow and unjustified contraction of the purpose of the act, which evidently was that the department should be held responsible for the consequences of its delicts. But, aside from this, when the State invests one of its citizens with a fixed right and a fixed remedy, it follows necessarily that it intended to invest him with every incident of those rights, one of which is the right to assignment. If there had been no insurance upon the car at all, and the owner, after the destruction of his car, by reason of the negligence of the department, would assign his claim against the department to a bank as

collateral to a loan with which to buy another car . . . could it be suc-
cessfully contended that the assignee had no cause of action against the
department because he was not mentioned in the act? As there *was*
insurance upon the car in the present instance, can it rightfully be held
that the owner's acceptance of the insurance canceled the statutory re-
sponsibility of the department? That conclusion would lead to the illogi-
cal result that the department, admittedly liable for the loss of the car to
the owner, is relieved entirely from liability by reason of the collection
of insurance by the owner; in other words, it would receive the full benefit
of insurance without having to pay a cent for it. Would it be contended
that the claim of the owner against the department would not descend to
his executor or administrator because such representative was not named
in the act?"

In 1950 *Jeff Hunt Mach. Co. v. South Carolina State Highway Dept.*,
217 S.C. 423, 60 S.E. 859, was heard on the pleadings. The Court stated
the first question involved was: "May a person whose property has been
damaged by reason of a defect in a state highway but who has been fully
reimbursed for such loss under a policy of insurance, maintain an action
against the State Highway Department for the amount of such damage
under Section 5887 of the 1942 Code of Laws for South Carolina?" The
pertinent part of the statute is as follows: "Any person, firm or corpo-
ration who may suffer injury to his or her person or damage to his, her
or its property by reason of a defect in any state highway, or by reason
of the negligent repair of any state highway . . . may bring suit against
the State Highway Department for the actual amount of said injury or
damage . . ." It was contended that the question was not an open one
in South Carolina, but had been concluded by the decision in *United
States Casualty Co. v. State Highway Dept.*, 155 S.C. 77, 151 S.E. 887.
The Court said: "The *United States Casualty Case* has been quoted with
approval and followed by the Supreme Court of Kansas, *American Mu-
tual Liability Ins. Co. v. State Highway Commission*, 146 Kan. 239, 69
P. 2d 1091" (1937), "and by the Supreme Court of Alabama. *Turner
et al. v. Lumbermens Mutual Ins. Co.*, 235 Ala. 632, 180 So. 300" (1938).
"But in *Dickerson et al. v. State*, 169 S.W. 2d 1005" (1943), "the Court
of Civil Appeals of Texas indicated some doubt as to the correctness of
our decision and quoted with approval from the dissenting opinion of
*Justice Cothran.*" The Court went on to say that on this subject there
had been considerable diversity of opinion in the lower Federal Courts as
to whether an insurance company could bring suit under the Federal Tort
Claims Act in its own name against the United States upon a claim to
which it had become subrogated by payment to an insured who would
have been able to bring such an action but that the matter was finally set
at rest by the decision of the United States Supreme Court in *United*

*States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 94 L. Ed. 171, 12 A.L.R. 2d 444, where it was held that such an action could be brought by the subrogated insurer. The South Carolina Court said: "We do not think the *U. S. Casualty Case* controls the precise question here. It is only authority for the position that an action of this kind cannot be brought in the name of a subrogee because the immunity waived by the statute is not extended to such a party . . . that is to say, the proper plaintiff in suits under the statute is a person who has been damaged by the defect in the highway, and therefore the suit can properly be filed only by that person." In the *Jeff Hunt Mach. Co. Case* the Court decided that the owner, whose property was damaged by reason of a defect in state highway was entitled to maintain suit in its own name against the department though the owner had been reimbursed for its loss by its insurer, and was bringing action for benefit of insurer.

The Kansas Court followed the South Carolina Court in the *U. S. Casualty Case;* the Alabama Court followed the Kansas Court in the *Turner et al. Case,* and the South Carolina Court in the *United States Casualty Co. Case,* and in 1950 the *United States Casualty Co. Case* was repudiated in the home of its origin by the South Carolina Court in the *Jeff Hunt Mach. Co. Case.* The reasoning of the Kansas Court and the Alabama Court is that the Tort Claims Acts of their states are to be strictly construed, and as these Acts do not provide for subrogation, none exists under these Acts.

After investigation we have been unable to find any other cases directly in point, and counsel for the appellant and the Attorney-General have cited in their briefs no other cases on all fours.

The equitable principle of subrogation is universally recognized. *State Farm Mut. Liability Ins. Co. v. United States, supra.* The doctrine of subrogation "is a remedy which is highly favored, and is not so restricted in its application as formerly. The courts are inclined rather to extend than to restrict the principle, so that although formerly the right was limited to transactions between principals and sureties, now it is broad and expansive and has a very liberal application." *Boney, Ins. Comr., v. Ins. Co.,* 213 N.C. 563, 568, 197 S.E. 122.

"Legal subrogation, as distinguished from conventional subrogation, is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it. It arises when one person has been compelled to pay a debt which ought to have been paid by another and for which the other was primarily liable." *Beam v. Wright,* 224 N.C. 677, 683, 32 S.E. 2d 213.

Our Tort Claims Act is not a verbatim copy of the Federal Tort Claims Act, nor of that of the State of South Carolina. However, we think that the logic and reasoning of the Federal Courts above cited, of *Cothran, J.,*

in the *United States Casualty Co. Case* and of the South Carolina Court in the *Jeff Hunt Mach. Co. Case* that the right of subrogation in those cases does exist is correct, and applies to our Tort Claims Act. Our Legislature by enacting our Tort Claims Act has established a policy which opens the door to tort claims based on negligence. By enacting this law it has relieved itself of passing on these claims. The Legislature has directed the Industrial Commission to hear and determine the plaintiff's claim. If the State had desired to exclude the right of subrogation, it would have written such exemption into the Act.

If the plaintiff had had no insurance upon his automobile, the Commission would have awarded him $121.55 for damages to his automobile. Because the plaintiff had collision insurance with a $50.00 deductible provision, and was paid $71.55 by the insurance company, the defendants contend that their liability is limited to $50.00, and that the Tort Claims Act should not be construed to permit an award of $121.55 to the plaintiff, $71.55 of which would be for the benefit of the insurance company by way of subrogation.

If the defendants were private persons, can it be doubted that the right of subrogation would exist? The State has waived its immunity as to plaintiff's claim, and in doing so occupies the same position as any other litigant, and is entitled to no special privileges.

It is not apparent why the prudent foresight of the plaintiff in protecting its property by insurance should result in a benefit to the State, or a detriment to the insurance carrier. In this respect the carriage of insurance would seem to be, so far as the State is concerned, merely a transaction between the plaintiff and the insurance company, in which the State was no wise interested. It was, therefore, *res inter alios acta.*

We cannot accept the narrow interpretation of our Tort Claims Act as contended for by the defendants. That interpretation would lead, to paraphrase the words of *Cothran, J.,* in *U. S. Cas. Co. v. State Highway Dept., supra,* to the illogical result that the defendants admittedly liable for the entire damage to plaintiff's automobile, if he had had no insurance, are relieved of partial liability by reason of the collection of insurance by the plaintiff for part of the loss; in other words, the defendants would receive the benefit of the insurance without having to pay a cent for it.

The plaintiff can maintain this proceeding in its own name for the benefit of itself and the insurance company, though the insurance company is a proper party, and can be made a party by the Industrial Commission or the Court in its discretion. *Jackson v. Baggett,* 237 N.C. 554, 7 S.E. 2d 532; *Burgess v. Trevathan,* 236 N.C. 157, 72 S.E. 2d 231.

When we consider that the principle of subrogation, a creature of equity, universally recognized and highly favored by the courts, is broad

2—238

enough to include every instance in which one person not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter, we decide in this case that the insurance company, which by virtue of its contract of insurance has paid the plaintiff part of its damage to its automobile caused by the actionable negligence of the defendants without any contributory negligence on plaintiff's part, is subrogated to the rights of the plaintiff against the defendants, in the amount it has paid.

The plaintiff's assignment of error to the judgment is sustained. It is ordered that this proceeding be remanded to the Superior Court that judgment may be entered awarding the plaintiff $121.55 as damages, $71.55 of which award shall be held by the plaintiff for the benefit and use of the Southern Fire Ins. Co. of Durham.

Error and remanded.