HARRIET LAWSON, Administratrix of the Estate of CLEO LAWSON, Deceased, v. THE NORTH CAROLINA STATE HIGHWAY AND PUBLIC WORKS COMMISSION.

(Filed 30 April, 1958.)

1. State § 3a—

The State may be sued in tort only in those instances in which it has waived its sovereign immunity by statute.

2. Same: Master and Servant § 39a—

Action to recover for the wrongful death of a prisoner assigned to work under the supervision of the State Highway and Public Works Commission may be maintained under the State Tort Claims Act, G.S. 143-291, the sole remedy not being under the Workmen's Compensation Act. G.S. 97-10, G.S. 97-13(c). As to the effect of the amendment to G.S. 97-13(c) by Session Laws of 1957, *quaere?*

3. State § 3b— Cause of action held based upon negligent act within purview of State Tort Claims Act.

This action for wrongful death was instituted to recover for the electrocution of a prisoner while working under the supervision of a State prison guard. The stipulations and findings were to the effect that the crew was working in removing trees and brush blown along the highway by a hurricane, that the guard should have reasonably foreseen that members of the crew might come into contact with a live wire in the performance of the work, and that the guard failed to ascertain whether the prisoners could work in safety in the area to which he assigned them. *Held:* The cause was based upon a negligent act within the purview of G.S. 143-291 prior to the 1955 amendments, rather than negligent omission, the guard's omissions in respect to failing to ascertain whether the prisoners could work in safety in the area being but the circumstance of the negligent act in putting them to work in the area of hidden danger.

Appeal by plaintiff from *Fountain, J.,* October Term, 1957, of Greene.

Proceeding before the North Carolina Industrial Commission to recover under Tort Claims Act (G.S. Ch. 143, Art. 31) for the death of Cleo Lawson, allegedly caused by the negligence of L. R. Barefoot, defendant's employee.

The stipulations, and the findings of fact made by Commissioner Ransdell, quoted below, disclose the factual situation.

STIPULATIONS

"1. That the accident giving rise to this claim occurred on the east side of Highway No. 258, two miles north of Snow Hill on October 18, 1954, at about 9:15 a.m.

"2. That on said date L. R. Barefoot was an employee of the State Highway & Public Works Commission, which is an agency of the State of North Carolina, and that said employee at the times complained

of in this proceeding was acting within the scope of his employment.

"3. That Harriet Lawson is the duly qualified, appointed and acting administratrix of the estate of Cleo Lawson, deceased, whose death gives rise to this claim.

"4. That plaintiff's claim was filed with the Industrial Commission on March 2, 1955.

"5. That at the time of his death, Cleo Lawson was a prisoner assigned to work under the supervision of the State Highway & Public Works Commission; that L. R. Barefoot was in charge of the work crew to which Cleo Lawson was assigned on October 18, 1954.

"6. That Cleo Lawson died on October 18th 1954, and that his death was caused by his electrocution."

## FINDINGS OF FACT

"1. That October 18, 1954 was on a Tuesday following Hurricane Hazel on the preceding Friday; that L. R. Barefoot was a guard at Prison Camp #204, where Cleo Lawson was a prisoner; that on the day in question L. R. Barefoot left the prison camp with the prisoners assigned to work under his supervision; that their work that day was to consist of removing trees, brush, and other debris from the highways which had been placed thereon by Hurricane Hazel.

"2. That Cleo Lawson was the water boy for the crew working under the supervision of L. R. Barefoot; that sometimes he performed other tasks and it was not unusual for him to assist the other prisoners in the work they were all trying to accomplish and which had been assigned them; that a few minutes prior to his death Cleo Lawson had been and secured water for the crew to which he was assigned and had finished giving the other prisoners a drink of water; that he then went to the east side of Highway #258 and started to helping Lovelace Pearson, a fellow prisoner, to clear a tree limb from the side of the road; that while engaged in these duties he came in contact with an energized power line, resulting in immediate death by electrocution.

"3. That L. R. Barefoot was aware of the fact that electric wires were down on or near the highway as a result of the winds from Hurricane Hazel prior to the time work was begun on October 18, 1954; that notwithstanding this fact he did not contact the power companies to ascertain that the electricity was shut off from these wires during the period the highway was being cleared; that he instructed the prisoners under his supervision to be on the alert for electric wires; that Cleo Lawson was working under the instruction, direction, and supervision of the said L. R. Barefoot at the time of his death.

"4. That L. R. Barefoot was negligent in not ascertaining that the prisoners under his supervision could work in safety, he having knowledge that electric wires were down in the vicinity in which they were

working; that his negligence in not calling the power companies and requesting them to switch the electricity from the wires which were down was the proximate cause of the death of Cleo Lawson, without contributory negligence on the part of the plaintiff or the person in whose behalf the claim is asserted.

"5. (Facts relating solely to amount of award.)"

Upon these facts and his conclusions of law, Commissioner Ransdell, the hearing Commissioner, "ORDERED that defendant pay plaintiff the sum of $6,000 in full settlement of all her rights by reason of the death of Cleo Lawson."

Upon review, the full Commission, overruling defendant's exceptions thereto, adopted as its own the said findings of fact and the conclusions of law and affirmed said award.

Upon appeal to the superior court, defendant brought forward its exceptions to said findings of fact and to the conclusions of law. After hearing, the court entered judgment, which after recital of the prior proceedings, concluded in these words:

"And the Court being of the opinion that the North Carolina Workmen's Compensation Act, Chapter 97, Article 1, of the General Statutes of North Carolina, provides an exclusive remedy against the State for accidental injury or death of a prisoner arising out of and in the course of the employment to which he had been assigned.

"And the Court being further of the opinion that there can be no recovery against the State under the Tort Claims Act for a negligent omission; that the negligence of L. R. Barefoot, if any, was a negligent omission rather than a negligent act as required by the Tort Claims Act;

"And the Court further being of the opinion that the exceptions of the defendant relative to these two issues should be sustained; and it appearing to the Court that the defendant has abandoned all other exceptions;

"IT IS NOW, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED that defendant's exceptions relative to these two issues be and they are hereby sustained; it is FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that this cause be and the same is hereby remanded to the North Carolina Industrial Commission to be dismissed by it."

Plaintiff excepted and appealed.

*Harvey E. Beech and White & Aycock for plaintiff, appellant.*
*Attorney-General Patton, Assistant Attorney-General Wooten and Parks H. Icenhour, Member of Staff, for defendant, appellee.*

BOBBITT, J.   The court below did not rule on defendant's exceptions to findings of fact. It appears that, at the hearing in the superior court, defendant abandoned all exceptions except those directed to the two questions of law upon which the court based its judgment. Hence, as the case comes to us, we must consider the facts to be as set out in the stipulations and findings of fact.

Defendant's contention that plaintiff's sole remedy is under the Workmen's Compensation Act, G.S. Ch. 97, Art. 1, requires consideration of G.S. 97-13(c) and G.S. 97-10, the specific provisions on which defendant relies.

The Workmen's Compensation Act "contains elements of a mutual concession between the employer and employee by which the question of negligence is eliminated." *Conrad v. Foundry Co.,* 198 N.C. 723, 153 S.E. 266. Its provisions relate explicitly to employees, employers and employment. G.S. 97-10, in pertinent part, provides: "The rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this article, . . . shall exclude all other rights and remedies of such employee, his personal representative, . . . as against his employer at common law, or otherwise, on account of . . . injury, loss of service, or death."

"Negligence cannot be imputed to the sovereign, and for this reason, *in the absence of statute,* no private action for tort can be maintained against the State." (Our italics) *Scales v. Winston-Salem,* 189 N.C. 469, 127 S.E. 543. Thus, in the absence of statute, it was held that a prisoner, injured by the negligence of the overseer under whom he was placed, had no cause of action against the State, his sole remedy being against the overseer as an individual. *Clodfelter v. State,* 86 N.C. 51; *Moody v. State Prison,* 128 N.C. 12, 38 S.E. 131. It is noted that G.S. 28-173, which created the statutory cause of action for wrongful death, applies only to causes of action where the injured person, if he had lived, could have recovered. Thus, plaintiff's right to recover on account of the death of her intestate rests solely upon statutes whereby the State has waived its sovereign immunity.

A prisoner is not an employee as defined by G.S. 97-2(b). He is not a person "engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written." *Baker v. State,* 200 N.C. 232, 156 S.E. 917; *Moore v. State,* 200 N.C. 300, 156 S.E. 806; also, see *Alliance Co. v. State Hospital,* 241 N.C. 329, 85 S.E. 2d 386. Indeed, when the word "employee" was defined by Ch. 120, Sec. 2(b), Public Laws of 1929, Sec. 14(c) of said 1929 Act explicitly provided: "This act shall not apply to State prisoners nor to County convicts." Sec. 14(c) of the 1929 Act was stricken out by Ch. 295, Public Laws of 1941, which substituted therefor the provisions now codified as G.S. 97-13(c).

LAWSON *v.* HIGHWAY COMMISSION.

G.S. 97-13(c) conferred limited rights upon prisoners *in a special classification,* to wit, those assigned to work under the supervision of the State Highway and Public Works Commission, in the event they suffered "accidental injury arising out of and in the course of the employment to which . . . assigned." No provision was made for other prisoners.

While G.S. 97-13(c) is not free from ambiguity, we assume, for present purposes, that its provisions permitted the establishment of a claim for the *burial expenses* of a prisoner whose death occurred while a prisoner.

With knowledge, actual or presumed, of the limited rights theretofore conferred upon prisoners in this special classification, the General Assembly of 1951 enacted the Tort Claims Act. Ch. 1059, Session Laws of 1951. It did not except any prisoners from its provisions. In *Gould v. Highway Com.,* 245 N.C. 350, 95 S.E. 2d 910, this Court held that a prisoner not in said special classification was entitled to recover under the Tort Claims Act.

Defendant's contention that, because of G.S. 97-10, prisoners in the favored classification have only such rights as are conferred by G.S. 97-13(c) while other prisoners, unimpeded by G.S. 97-10, have the full benefit of the Tort Claims Act is not, in our opinion, in reasonable accord with the intent of the 1951 General Assembly. Moreover, if it be conceded that the word "employee" as used in G.S. 97-10 could be enlarged by interpretation to include a prisoner, this construction would bring about a conflict between G.S. 97-10 and the statutory rights expressly conferred by the Tort Claims Act. In such case, the Tort Claims Act would prevail. It provides: "All laws and clauses of laws in conflict with this Act are hereby repealed."

Defendant directs our attention to Ch. 809, Session Laws of 1957, which amends G.S. 97-13(c) by adding thereto the following: "The provisions of G.S. 97-10 shall apply to prisoners and discharged prisoners entitled to compensation under this subsection and to the State in the same manner as said Section applies to employees and employers."

The 1957 Act reflects the intention of the General Assembly of 1957. Apparently, although the reason therefor is obscure, the 1957 General Assembly concluded that prisoners at work on an assigned task should be denied rights conferred by the Tort Claims Act on other prisoners. Be that as it may, we are concerned with the intent of the 1957 General Assembly at the time it enacted the Tort Claims Act, and on that question the 1957 Act casts no light.

Defendant's further contention is that plaintiff cannot recover un-

der the Tort Claims Act because Barefoot's negligence, if any, consisted of omissions, not acts.

Plaintiff's right to recover depends upon the provisions of G.S. 143-291 prior to the 1955 amendments. She was entitled to recover if the death of her intestate was caused by the negligent act(s) of a designated State employee while acting within the scope of his employment and there was no contributory negligence on the part of her intestate. *Flynn v. Highway Com.*, 244 N.C. 617, 94 S.E. 2d 571; also, see *Tucker v. Highway Com.*, 247 N.C. 171, 100 S.E. 2d 514.

In the *Flynn* case, the alleged negligence was the failure to repair a hole in the highway caused by ordinary public travel. Recovery was denied. In the *Tucker* case, "The accident occurred during that 55-day period when the law permitted recovery 'when the claim arose as the result of a negligent act *or omission* on the part of a State employee.'" Chapters 400 and 1361, Session Laws of 1955.

Plaintiff's intestate "was working under the instruction, direction and supervision of . . . Barefoot (the designated State employee) at the time of his death." True, his special job was that of water boy; but when not so engaged he performed other tasks and gave assistance to the other prisoners.

While the findings of fact established Barefoot's negligent failure to ascertain whether the prisoners under his supervision could work in safety in the area to which he assigned them, his omissions in this respect constituted the circumstances under which he acted, not the cause of Lawson's death. The basis of plaintiff's claim is Barefoot's act, in the light of such circumstances, in putting the prisoners, including Lawson, to work in an area of hidden danger when he should have reasonably foreseen that they might and probably would unwittingly come in contact with a live wire. In our view, the findings support the Commission's composite conclusion of fact and law, set forth in its Conclusions of Law, that the negligence of Barefoot was the proximate cause of Lawson's death.

*Greene v. Board of Education*, 237 N.C. 336, 75 S.E. 2d 129, and *Lyon & Sons v. Board of Education*, 238 N.C. 24, 76 S.E. 2d 553, involved proceedings under G.S. 143-291 et seq., where injury was inflicted by the negligent operation of a school bus. In each, plaintiff recovered. The driver's failure to exercise due care to observe the child in front of the bus (*Greene* case) or the the automobile behind the bus (*Lyon* case) did not proximately cause the injury or damage. The fact that the driver operated the bus under such circumstances was the negligent act that proximately caused the injury or damage.

For the reasons stated, plaintiff's assignments of error to the court's rulings are sustained. The judgment of the court below is reversed and

the cause remanded for the entry of judgment implementing the Commission's said award.

Reversed and remanded.