CHARLES M. IVEY, JR., ADMINISTRATOR OF THE ESTATE OF CECIL G. KING, DECEASED, v. NORTH CAROLINA PRISON DEPARTMENT.

(Filed 10 June, 1960.)

**1. State § 3a—**

Under the State Tort Claims Act, the State waives its immunity from liability for injuries resulting from the negligence of its officers, employees and servants if under the same conditions a private person would be liable, and the Industrial Commission is given jurisdiction to hear and pass on such tort claims.

**2. Same: Master and Servant § 49—**

The State Tort Claims Act expressly repealed all prior laws in conflict therewith, G.S. 143-291, and therefore this Act repealed any repugnant provisions of G.S. 97-13(c) prior to the 1957 amendment.

**3. Same—**

The personal representative of a prisoner who is fatally injured while performing an assigned task as the result of the negligent act of an employee of the State is entitled to prosecute a claim under the Tort Claims Act unless such right is withdrawn by the 1957 amendment to G.S. 97-13(c).

**4. Same—**

The 1957 amendment to G.S. 97-13(c) (Chap. 809, Public Laws, 1957) does not have the effect of limiting the liability of the State for the death of a prisoner resulting from the negligence of a state employee to the payment of funeral expenses under G.S. 97-13(c), but the personal representative of the deceased prisoner may prosecute a claim under the State Tort Claims Act, since the payment of funeral expenses. even though a part of compensation, is not the payment of compensation as defined in G.S. 97-2(11) and the 1957 amendment applies by its express terms only to prisoners and discharged prisoners entitled to compensation.

**5. Statutes § 13—**

Repeals by implication are not favored by the law and will not be indulged if there is any other reasonable construction.

RODMAN, J., dissenting.

DENNY, J., joins in dissenting opinion.

APPEAL by plaintiff from *Carr, J.,* November, 1959 Civil Term, CHATHAM Superior Court.

This proceeding was instituted before the North Carolina Industrial Commission under the Tort Claims Act to recover for the death of Cecil G. King alleged to have been caused by the negligent act of Edward Wright, an employee of the North Carolina Prison Department. The defendant filed a demurrer to the claim and asked that it be dismissed on the ground the personal representative of the deceased prisoner cannot maintain a tort claim action for that his remedy under the Workmen's Compensation Act is exclusive.

The hearing commissioner, upon stipulations and the evidence, made findings of fact that in 1950 the deceased was committed to prison for armed robbery to serve a sentence of 17 to 25 years. Prior to his imprisonment he earned from $40 to $100 per week. As a prisoner he earned a substantial income from the manufacture of leather goods and by taking still and moving photographs of prison activities. On the night of March 21-22, 1958, the deceased prisoner was ordered to accompany Edward Wright, an employee of the defendant, to Raleigh for the purpose of taking a sick prisoner to the prison hospital. The hearing commissioner found:

> "4. During the night of 21-22 March 1958 the Lincolnton Prison Camp was under the command of Hugh A. Logan, Jr., Assistant Superintendent of the prison camp. Shortly before midnight on such night Mr. Logan had the deceased awakened and ordered or directed that the deceased go with Edward Wright, an employee of the prison camp, to Raleigh in order to take a sick prisoner to the prison hospital. The deceased was ordered to make the trip as an assistant to Wright and to assist Wright on the trip in any way possible. The trip to Raleigh commenced at approximately midnight, with Wright driving a prison pickup truck with cage on the back. The deceased rode with Wright in the cab of the truck and the sick prisoner was placed on a mattress in the cage at the back of the truck.
>
> "5. While driving the prison truck towards Raleigh and in an easterly direction on U. S. Highway 64, Wright failed to slow down before approaching the proximity of a stop sign on U. S. Highway 64 at the intersection of U. S. Highway 64-A, despite two or three signs warning of the intersection. Wright applied the brakes of the truck suddenly while driving 55 miles per hour, lost control of the truck, it went off the road and turned end over end near the junction of the intersecting highways.
>
> "6. The above named employee of the defendant, Wright, did

other than a reasonably prudent person would have done under the same or similar conditions. This constituted negligence upon his part and such negligence was the proximate cause of the accident giving rise hereto.

"7. As a result of the accident giving rise hereto deceased sustained severe injuries. The injuries resulted in the death of deceased at 5:40 p m., on 22 March 1958."

The hearing commissioner sustained the demurrer. The full commission and the superior court upon review sustained the ruling on the demurrer. From the order accordingly entered in the Superior Court of Chatham County, the plaintiff appealed.

*T. W. Bruton, Attorney General, Bernard A. Harrell, Trial Attorney, for the State.*
*Martin & Whitley, By: Robert M. Martin for plaintiff, appellant.*

HIGGINS, J.   The General Assembly, by Article 31 of Chapter 143, General Statutes, has constituted the North Carolina Industrial Commission a court with jurisdiction to hear and pass on tort claims against the State Board of Education, State Highway Commission, and all other departments, institutions and agencies of the State. The State is made liable up to $10,000 for the negligent act of its officers, employees and servants if under the same conditions a private person would be liable. *Turner v. Board of Education,* 250 N.C. 456, 109 S.E. 2d 211; *Lawson v. State Highway & Public Works Commission,* 248 N.C. 276, 103 S.E. 2d 366; *Alliance Co. v. State Hospital,* 241 N.C. 329, 85 S.E. 2d 386; *Lyon & Sons, Inc. v. N. C. State Board of Education,* 238 N.C. 24, 76 S.E. 2d 553.

The Industrial Commission's findings of fact established that the plaintiff's intestate, a prisoner, while performing an assigned task, met his death as result of the negligent act of Edward Wright, an employee of the State, while acting within the scope of his employment. Thus the findings established the plaintiff's right to assert this claim on behalf of his intestate unless some other provision of law withdraws the right.

The plaintiff contends that nowhere in the law is the right to maintain the tort action withdrawn. On the other hand, the defendant contends that G.S. 97-10 and G.S. 97-13, subsection (c) as amended, provide a remedy under the Workmen's Compensation Act which is exclusive. G.S. 97-10 grants rights and remedies where the employer and employee have accepted the provisions of the Workmen's Compensation Act. G.S. 97-13 exempts from the provisions of the Work-

men's Compensation Act the following: (a) railroad employees; (b) casual employees, domestic servants, farm laborers, Federal government employees, employers of less than five employees; (c) "Prisoners.—This article (Workmen's Compensation) shall not apply to prisoners being worked by the State or any subdivision thereof, except to the following extent: Whenever any prisoner assigned to the State Prison Department shall suffer accidental injury arising out of and in the course of the employment to which he has been assigned, if the results of such injury continue until after the date of the lawful discharge of such prisoner to such an extent as to amount to a disability as defined in this article, then such discharged prisoner *may* (emphasis added) have the benefit of this article by applying to the Industrial Commission as any other employee; provided, such application is made within 12 months from the date of discharge; and provided, further, . . . (here follow provisions not here material) and no award other than burial expenses shall be made for any prisoner whose accident results in death. . . ." The foregoing provisions of G.S. 97-10 and G.S. 97-13 were in effect when the Tort Claims Act (G.S. 143-291) was passed in 1951, repealing all inconsistent provisions of law.

In 1957, Public Laws, Ch. 809, amended G.S. 97-13, subsection (c) by the following: "The provisions of G.S. 97-10 shall apply to prisoners and discharged prisoners entitled to compensation under this subsection and to the State in the same manner as said section applies to employees and employers." As stated by *Bobbitt, J.*, in *Lawson v. Highway Commission*, 248 N.C. 276, 103 S.E. 2d 288, "G.S. 97-13(c) conferred limited rights upon prisoners *in a special classification*, to wit, those assigned to work under the supervision of the State Highway & Public Works Commission, in the event they suffered 'accidental injury arising out of and in the course of employment to which . . . assigned.' No provision was made for other prisoners." . . .

"With knowledge, actual or presumed, of the limited rights theretofore conferred upon prisoners in this special classification, the General Assembly of 1951 enacted the Tort Claims Act. . . . It did not exempt any prisoners from its provisions. In *Gould v. Highway Commission*, 245 N.C. 350, 95 S.E. 2d 910, this Court held that a prisoner not in said special classification was entitled to recovery under the Tort Claims Act." The case then raised the question whether the 1957 amendment to G.S. 97-13(c) denied to prisoners on assigned tasks rights conferred by the Tort Claims Act.

As stated by *Justice Bobbitt* in the *Lawson* case, G.S. 97-13 (c) is

not free from ambiguity. The purpose and meaning of the 1957 amendment were not directly involved in that case. Here it is involved. Any inconsistencies between subsection (c) before the amendment and the Tort Claims Act were repealed by the latter. The question now is whether the 1957 amendment withdraws the plaintiff's right to assert a tort claim.

If the Legislature intended to withdraw altogether a prisoner's right to pursue a tort claim, the logical procedure would be by amendment to the section of the Tort Claims Act which gave the right. No valid reason is suggested why the withdrawal, if such were intended, should be by an amendment tucked away in a jumbled and confusing subsection which is an exception followed by two provisos to the section of the Workmen's Compensation Act, entitled, "Exceptions from provisions of article." Interpretation of §97-13, subsection (c), originally and after the amendment, presents a problem in legal quadratics. The amendment makes no reference to the Tort Claims Act. "Repeals by implication are not favored by the law and will not be indulged if there is any other reasonable construction." Cab Co. v. Charlotte, 234 N.C. 572, 68 S.E. 2d 433. "The presumption is against the intention to repeal where express terms are not used, and will not be indulged if by any other reasonable construction the statutes may be reconciled and declared to be operative without repugnance. 'To justify the presumption of an intention to repeal one statute by another, either the two statutes must be irreconcilable, or the intent to effect a repeal must be otherwise clearly expressed.'" Spaugh v. Charlotte, 239 N.C. 149, 79 S.E. 2d 748; McLean v. Board of Elections, 222 N.C. 6, 21 S.E. 2d 842; Kelly v. Hunsucker, 211 N.C. 153, 189 S.E. 664; Story v. Commissioners, 184 N.C. 336, 114 S.E. 493.

Actually, by its own terms, the 1957 amendment applies only to prisoners and discharged prisoners entitled to compensation under this subsection. The limitation in the amendment that it shall apply to prisoners and discharged prisoners entitled to compensation does not require — even if it permits — the interpretation placed upon it by the Prison Department that the payment of burial expenses constitutes the payment of compensation. The term compensation as used in the Workmen's Compensation Act is defined in G.S. 97-2(11): "When used in this article unless the context otherwise requires . . . means the money allowance payable to an employee or to his dependents as provided for in this article, and includes funeral benefits provided herein." As defined by this Court in Branham v. Panel Co., 223 N.C. 233, 25 S.E. 2d 865: "Compensation in the connection in which it is used in this Act means money relief afforded according to a scale es-

tablished and for the person designated in the Act." In *Whitted v. Palmer-Bee Co.*, 228 N.C. 447, 46 S.E. 2d 109, the Court said: "Compensation is defined in our statutes as the money allowance payable to an employee or his dependents, including funeral expenses."

To be sure, the definition includes burial expenses, but it takes the whole to constitute compensation and not one of its parts. A vest is a part of a suit of clothes, but a vest cannot be called a suit. Surely compensation for wrongful death involves more than the burial of the body.

The rule against repeal by implication requires us to hold the plaintiff's right to have the tort claim heard and passed on has not been withdrawn. If the Legislature intended to exclude prisoners, all it had to do was pass a simple amendment to the Tort Claims Act saying, "prisoners assigned by the courts to work under the State Prison Department are excluded." Intention to withdraw a prisoner's right to assert a tort claim cannot be presumed as a result of the amendment to the Workmen's Compensation Act in its present form and setting.

The claimant administrator is entitled to have the North Carolina Industrial Commission hear and pass on his tort claim against the Prison Department. The judgment of the Superior Court sustaining the demurrer is

Reversed.

RODMAN, J., dissenting. To determine plaintiff's right to recover it is necessary, I think, to see what rights he possessed at common law and how those rights may have been enlarged by statute.

At common law an employee who was negligently injured by another had a right of action against the party causing the injury. The common law held an employer liable for the acts of his employees when done in the course of their employment. Hence when an employee was negligently injured by another employee, not a fellow servant, he had a right of action against the employee who inflicted the injury or against the employer or against both.

The rule of *respondeat superior* did not apply when the State or one of its agencies was the employer. The doctrine of governmental immunity forbade the injured party to sue. This rule of governmental immunity was applied in *Clodfelter v. State*, 86 N.C. 51, to defeat recovery by a convict who was injured by the negligence of his supervisor. The rule of governmental immunity declared in the *Clodfelter* case has been applied indiscriminately in denying claims made by employees of the Prison Department and by prisoners. *Moody v. State*

*Prison,* 128 N.C. 12; *Gentry v. Hot Springs,* 227 N.C. 665, 44 S.E. 2d 85.

In 1929 a new public policy was declared by the State with respect to compensation of workers for injuries sustained in the performance of tasks to which they were assigned. The Legislature enacted our Workmen's Compensation Act, c. 120, P.L. 1929. After 1 July 1929, the effective date of that Act, an employee working for an employer who had not rejected the provisions of the Act was not required to prove negligence proximately causing his injuries. Common law defenses of contributory negligence, assumption of risk, and fellow servant could no longer be used to defeat his claim. It was sufficient to show injury arising out of and in the course of his employment. The amount to be paid was fixed by statute to provide fair compensation based on the nature and extent of the injuries. The original Act with the subsequent amendments now appears as c. 97 of the General Statutes.

By express language the word "employer" included the State and all its political subdivisions. Sec. 2(c), c. 120, P.L. 1929, G.S. 97-2(3). This section likewise defined employment and employee. Doubtless because of the breadth of these definitions and the single reason of governmental immunity assigned for denying liability in the *Clodfelter* and *Moody* cases, *supra,* the Legislature deemed it wise to make it clear that the Act was not intended to permit a prisoner to claim compensation even though he might be assigned to work with free labor. Hence the Act expressly provided in sec. 14(c), (G.S. 97-13(c)): "This act shall not apply to State prisoners nor to County convicts."

Court decisions and legislative history establish beyond peradventure that a prisoner could not, prior to 1941, collect compensation from the State or its subdivisions for injuries negligently inflicted while serving his sentence. The Legislature of 1941, as it had a right to do, elected to permit certain prisoners to receive compensation for disabilities which continued after the prison term had expired.

C. 295, P.L. 1941, is entitled: "AN ACT TO AMEND CHAPTER ONE HUNDRED AND TWENTY OF THE PUBLIC LAWS OF ONE THOUSAND NINE HUNDRED AND TWENTY-NINE, SO AS TO PROVIDE CERTAIN BENEFITS OF THE WORKMEN'S COMPENSATION ACT FOR PRISONERS INJURED WHILE ENGAGED IN HIGHWAY WORK." It rewrote subsection (c) of section 14 of the original Act and made it read: "This act shall not apply to prisoners being worked by the State or any subdivision thereof, except to the following extent: Whenever any prisoner assigned to the State Highway and Public Works Commission shall suffer ac-

cidental injury arising out of and in the course of the employment to which he had been assigned, if the results of such injury continue until after the date of the lawful discharge of such prisoner to such an extent as to amount to a disability as defined in this act, then such discharged prisoner may have the benefit of this act by applying to the Industrial Commission as any other employee . . ."

The language of both the caption and the statute itself are important. The original statute made no distinction between prisoners who were assigned to work and those confined without such assignment, this for the sound reason that a right did not accrue to any worker unless the injury arose out of and in the course of employment. The intent of the Legislature is, I think, plain. It said that the mere fact that one was a prisoner did not defeat his right to compensation for injuries sustained when under like circumstances a worker not a prisoner would be entitled to recover; but it made it equally plain that no right to compensation existed so long as the worker was serving his prison term. The benefits accrue only in the event the disability continues beyond the prison term. Governmental immunity was waived in a limited area.

Increasing governmental activity in the broad field of communications—the construction and maintenance of highways and the transportation of school children—partly performed by private contractors and partly by the State with prisoners or hired labor, inevitably resulted in injuries to citizens other than those at work. Each session of the Legislature was confronted with an increasing number of claims with respect to which it was requested to waive governmental immunity and pay for losses sustained resulting from the negligence of some agent or employee of the State.

By 1951 the number of such claims so presented to the Legislature exceeded 200. Its committees did not have time to investigate the facts on which the obligation to pay was based. Hence the enactment of c. 1059, Session Laws 1951, the so-called Tort Claims Act.

That Act authorized the Industrial Commission to investigate the claims there listed, in excess of 200, and if the injuries asserted "arose as a result of a negligent act of a State employee while acting within the scope of his employment" to award compensation. Not only was the Commission authorized to investigate the claims listed, but it was authorized to determine if claims subsequently asserted were the result of negligent acts of a State employee.

To properly determine the character of claims thereafter arising as to which the Commission was authorized to investigate and award compensation, it is, I think, important to look at the character of the

claims expressly referred to the Commission for determination. A casual examination of the claims listed in the Act of 1951 will show their nature and character. There is no suggestion in those claims that the State should compensate a prisoner for injuries sustained by him. I do not believe the Legislature would give to the Industrial Commission authority to award compensation to a prisoner for injuries sustained by the negligence of his supervisor without clearly and expressly so stating.

My thought that the Legislature did not intend that the Tort Claims Act should have the sweeping effect attributed to it is fortified, I think, by the provisions of c. 1314, Session Laws 1953, where it expressly declared that the Tort Claims Act did not apply to claims based on the negligence of doctors, surgeons, nurses, and other employees where medical or surgical treatment is given.

*Alliance Co. v. State Hospital,* 241 N.C. 329, 85 S.E. 2d 386, involved the liability of the State for damage sustained by plaintiff when struck by a motor vehicle operated by a prisoner on business for the State. Except for the fact that the driver was a prisoner, the claim fell squarely in the class of claims expressly referred to the Industrial Commission by the Legislature in 1951. When claim was presented, the State denied liability because the driver of the State's motor vehicle was a prisoner and because a prisoner was not an employee. Hence, said the State, the Tort Claims Act had no application. This Court held no liability existed. *Justice Bobbitt,* in concurring in the opinion written by the present Chief Justice, said: "In my opinion, our Tort Claims Act should be strictly construed. This is in accord with the rulings of most courts. 49 Am. Jur., States, Territories, and Dependencies, sec. 97; 81 C.J.S., States, sec. 215. Waiver of immunity beyond the provisions of the Act as strictly construed is a matter for determination by the General Assembly." This rule of construction was given express approval by the entire Court in *Floyd v. Highway Com.,* 241 N.C. 461, 85 S.E. 2d 703.

The Legislature was in session when the case of *Alliance v. State Hospital, supra,* was decided. It disagreed with the conclusion of this Court that the operator of the State's vehicle was not an employee within the meaning of the Tort Claims Act. Hence it enacted c. 400, Session Laws 1955, ratified 31 March 1955.

The original Act authorizing compensation where the "result of a negligent act of a State employee acting within the scope of his employment" was by the 1955 Act changed to authorize compensation for injuries which "arose as a result of a negligent act or omission of any officer, employee, voluntary or involuntary servant or agent of

the State." The Legislature clearly expressed its intent to enlarge the class for whose acts the State would be liable and for the character of the acts, whether acts of commission or omission, but it did not intimate that it intended to enlarge the class of those entitled to receive compensation and to shift those entitled to compensation under the workmen's Compensation Act to claimants under the Tort Claims Act. It is, I think, important to note the distinction which *Justice Bobbitt* points to in the case of *Alliance Co. v. State Hospital, supra*, between agents and employees. Fearful that these two words might not suffice to cover all who acted for the State, the Legislature expressly included officers and servants.

This Act was amended later in the session to delete the provision making the State liable for acts of omission and the words "voluntary or" as applied to servants. C. 1361, S.L. 1955.

It will be noted that no exemption is made for injuries resulting from the negligence of surgeons, nurses, and other employees at hospitals at Chapel Hill, Raleigh, Morganton, or other places where surgical and medical treatment is rendered. Notwithstanding this omission, recalling the reason which led to the enactment of c. 400, S.L. 1955, I doubt if the Legislature intended to repeal the exemption expressly declared in 1953.

I do not think the Legislature intended to deny to a prisoner the benefit of the Workmen's Compensation Act because the negligence of the prisoner and a supervisor caused the injury. I think the Legislature meant, as the 1941 amendment to the Workmen's Compensation Act declared, that a prisoner injured in work which he was assigned to do should have the benefit of that Act.

Eleanor Rush, a prisoner in Women's Prison, died in August 1954. The administratrix of her estate filed claim for compensation with the Industrial Commission, asserting her death was caused by the negligent act of prison officials and employees. The Commission heard the claim, found the asserted negligence, and awarded compensation. The award so made was affirmed by this Court. The right to recover under the Tort Claims Act was not raised or debated. Liability was made to depend on the question of whether there was any evidence of negligence, and if so, did the evidence establish as a matter of law the prisoner's contributory negligence. This Court sustained the findings of the Industrial Commission on the debated issues of negligence and contributory negligence. See *Gould v. Highway Com.*, 245 N.C. 350, 95 S.E. 2d 910.

Eleanor Rush's death could not by any stretch of the imagination be said to be an injury "arising out of and in the course of the em-

ployment to which (s)he had been assigned." The provisions of the Workmen's Compensation Act could not possibly apply to her. But that case has importance here only because of the reliance placed on it in the subsequent case of *Lawson v. Highway Com.*, 248 N.C. 276, 103 S.E. 2d 366, holding that the Tort Claims Act was intended to permit any prisoner to sue for injuries negligently inflicted.

The opinion in the *Rush* case *(Gould v. Highway Com., supra)* was published in the Advance Sheets on 1 February 1957. The Legislature then in session enacted c. 809, S.L. 1957. The Act was ratified in May 1957. The caption reads: "AN ACT TO AMEND G.S. 97-13(C) AS IT RELATES TO COMPENSATION TO BE PAID PRISONERS WHO ARE INJURED WHILE PERFORMING ASSIGNED WORK." Sec. 2 provides: "Subsection (c) of Section 97-13 of the General Statutes is hereby amended by adding at the end thereof the following:

'The provisions of G.S. 97-10 shall apply to prisoners and discharged prisoners entitled to compensation under this subsection and to the State in the same manner as said Section applies to employees and employers.' "

I cannot conceive the Legislature intended to give prisoners the right to choose between the Workmen's Compensation and the Tort Claims Act. If it did not and the Tort Claims Act repealed the right of prisoners to claim the benefit of the Workmen's Compensation Act, c. 809, S.L. 1957, was and is meaningless. Certainly the Legislature had some purpose in mind when it enacted the quoted statute. To me the statute says this: Prisoners who are assigned to work and while performing the task to which they are assigned are entitled to the basic rights of the Workmen's Compensation Act. This right is their sole right against the State. They need not establish negligence on the part of the State, nor will contributory negligence defeat the claim. They are not required to wait until the term of confinement has expired. They are entitled to compensation from the date of disability. The amount of compensation is, however, limited to ten dollars per week.

If the statute does have that meaning, it follows that plaintiff cannot recover under the Tort Claims Act. His intestate was at the time of the injury resulting in his death engaged in work to which he was specifically assigned.

Because recovery under the Workmen's Compensation Act is limited to funeral expenses is insufficient reason, in my opinion, for casting aside legislative language. I can think of no meaning which can be

given to the 1957 language unless it is to be read with the 1941 Act and is given the meaning ascribed above.

The views which I have expressed are, I recognize, contrary to what was decided in *Lawson v. Highway Com., supra.* Further study of the question convinces me we then misinterpreted legislative intent as expressed in enactments prior to 1957. It is to be noted that the opinion in the *Lawson* case expressly declares that it is based on legislative intent as expressed prior to 1957 and does not undertake to give effect to the 1957 statute.

The conflict between G.S. 97-13, as amended in 1957, and the Tort Claims Act, as amended in 1955, as interpreted by the majority, is, I think, certain to call for the ascertainment of legislative intent in cases to arise in the future. The Legislature may, when it convenes in February, feel the subject justifies a clear and unmistakable expression of its intent.

DENNY, J., joins in dissenting opinion.