PERCELL RICHARDSON v. NORTH CAROLINA DEPARTMENT OF CORRECTION

No. 250A95

(Filed 6 December 1996)

**1. Workers' Compensation § 41 (NCI4th)— prisoner injured on prison job—workers' compensation as exclusive remedy**

Workers' compensation is the exclusive remedy for prisoners injured while working on prison jobs because the effect of N.C.G.S. § 97-13(c) is that a working prisoner whose injuries arise out of and in the course of his work may get workers' compensation benefits by applying to the Industrial Commission within twelve months after discharge from prison, as long as the prisoner is still disabled from the injury at the time of discharge; section 97-13(c) further provides that a prisoner who is entitled to such compensation is subject to section 97-10.1 to the same extent as any other employee or employer; and section 97-10.1 establishes that workers' compensation is the exclusive remedy for injured workers. Therefore, plaintiff prisoner did not have the right to file a claim under the Tort Claims Act for injuries suffered while working on a prison farm.

**Am Jur 2d, Workers' Compensation § 157.**

**2. Workers' Compensation § 41 (NCI4th)— working prisoners—workers' compensation as exclusive remedy—equal protection—public policy**

The limitation of working prisoners to workers' compensation as their exclusive remedy does not violate their rights to

**RICHARDSON v. N.C. DEPT. OF CORRECTION**

[345 N.C. 128 (1996)]

equal protection by discriminating between working and nonworking prisoners and by discriminating between working prisoners and other employees. Nor does the exclusivity provisions of the Workers' Compensation Act in N.C.G.S. §§ 97-13(c) and 97-10.1 contravene sound public policy by lowering the incentive for prisons to provide safe working conditions for prisoners.

**Am Jur 2d, Workers' Compensation § 157.**

Appeal by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 118 N.C. App. 704, 457 S.E.2d 325 (1995), affirming an order of the Industrial Commission, filed 31 March 1994, dismissing plaintiff's claim under the Tort Claims Act. Plaintiff's petition for discretionary review as to additional issues was allowed by this Court on 15 September 1995. Heard in the Supreme Court 15 February 1996.

*N.C. Prisoner Legal Services, Inc., by Linda B. Weisel and Kathryn L. VandenBerg; and J. Henry Banks for plaintiff-appellant.*

*Michael F. Easley, Attorney General, by Don Wright, Assistant Attorney General, for defendant-appellee.*

*Patterson, Harkavy & Lawrence, by Martha A. Geer, on behalf of The American Civil Liberties Union of North Carolina Legal Foundation, amicus curiae.*

LAKE, Justice.

Plaintiff appeals a decision of the Court of Appeals upholding an order of the Industrial Commission dismissing plaintiff's claim under the Tort Claims Act. For the reasons stated herein, we conclude that plaintiff's exclusive source of remedy is through the Workers' Compensation Act, and thus plaintiff's claim under the Tort Claims Act is barred. Accordingly, we affirm the Court of Appeals.

On 13 September 1991, the plaintiff, an inmate at the Caledonia Correctional Institution, was operating a tractor with an attached silage harvesting machine at the prison farm. The farm superintendent directed plaintiff to operate the harvester. During the operation, plaintiff's legs were caught in the silage cutter. His right leg was almost completely severed and had to be amputated below the knee. His left leg was permanently and severely injured.

RICHARDSON v. N.C. DEPT. OF CORRECTION

[345 N.C. 128 (1996)]

On 23 September 1991, plaintiff filed a claim against the Department of Correction with the North Carolina Industrial Commission under the Tort Claims Act, N.C.G.S. §§ 143-291 to -300.1. The plaintiff alleged defendant's negligence, due to inadequate training and supervision, as the cause of his injury. In its answer, defendant Department of Correction denied plaintiff's tort claim and alleged contributory negligence on the part of the plaintiff as the cause of the injury. Defendant subsequently submitted an amended answer that included a motion to dismiss plaintiff's tort claim on the ground that workers' compensation was plaintiff's exclusive remedy.

When the case was called for hearing before Deputy Commissioner Jan N. Pittman, the parties requested a ruling on the motion to dismiss. No evidence was presented at the hearing. By order filed 6 January 1993, Deputy Commissioner Pittman granted defendant's motion to dismiss. Plaintiff appealed to the Full Commission, which, by order filed 31 March 1994, affirmed the decision of the deputy commissioner. Plaintiff appealed to the Court of Appeals, which affirmed the Full Commission.

[1] The sole issue on appeal is whether workers' compensation is the exclusive remedy for prisoners injured while working on prison jobs. In its opinion, the majority of the Court of Appeals found that sections 97-13(c) and 97-10.1 of the Workers' Compensation Act operate to prevent plaintiff from pursuing his claim under the Tort Claims Act. We agree with the majority's reasoning and affirm the Court of Appeals.

A thorough examination of the applicable provisions of the Workers' Compensation Act establishes that working prisoners are excluded from suing in tort for work-related injuries. N.C.G.S. § 97-13(c) sets forth the circumstances under which prisoners may be eligible for workers' compensation benefits and provides in relevant part:

This Article shall not apply to prisoners being worked by the State or any subdivision thereof, except to the following extent: Whenever any prisoner assigned to the State Department of Correction shall suffer accidental injury . . . arising out of and in the course of the employment to which he had been assigned, . . . if the results of such injury continue until after the date of the lawful discharge of such prisoner to such an extent as to amount to a disability as defined in this Article, then such discharged prisoner . . . may have the benefit of this Article by applying to the

Industrial Commission as any other employee; provided, such application is made within 12 months from the date of the discharge; and provided further that the maximum compensation to any prisoner . . . shall not exceed thirty dollars ($30.00) per week and the period of compensation shall relate to the date of his discharge rather than the date of the accident. . . . The provisions of G.S. 97-10.1 and 97-10.2 shall apply to prisoners and discharged prisoners entitled to compensation under this subsection and to the State in the same manner as said section applies to employees and employers.

N.C.G.S. § 97-13(c) (1991). N.C.G.S. § 97-10.1 defines the effect that coverage under workers' compensation has on other rights and remedies of the prisoner:

If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee . . . shall exclude all other rights and remedies of the employee . . . as against the employer at common law or otherwise on account of such injury or death.

N.C.G.S. § 97-10.1 (1991).

The effect of N.C.G.S. § 97-13(c) is that a working prisoner whose injuries arise out of and in the course of his work may get workers' compensation benefits by applying to the Industrial Commission within twelve months after discharge, as long as the prisoner is still disabled from the injury at the time of discharge. Section 97-13(c) further provides that a prisoner who is entitled to such compensation is subject to section 97-10.1 to the same extent as any other employee or employer. Section 97-10.1 establishes that workers' compensation is the exclusive remedy for injured workers. Thus, the language of the statute establishes that workers' compensation is the exclusive remedy for prisoners injured while working for the State.

In the instant case, plaintiff was severely and permanently injured while working as a prisoner. If and when plaintiff is released from prison, he can apply to the Industrial Commission for workers' compensation benefits. There is little doubt under the circumstances of this case that plaintiff will be found disabled and that his injury will be found compensable.

Plaintiff cites several cases in support of his argument that statutes and case law give prisoners the right to file claims under the

Tort Claims Act for injuries suffered on prison jobs. *Ivey v. N.C. Prison Dep't*, 252 N.C. 615, 114 S.E.2d 812 (1960) (burial expenses did not constitute compensation, and plaintiff could pursue Tort Claims Act suit); *Lawson v. N.C. State Highway & Pub. Works Comm'n*, 248 N.C. 276, 280, 103 S.E.2d 366, 369 (1958) (Tort Claims Act "did not except any prisoners from its provisions"); *Gould v. N.C. State Highway & Pub. Works Comm'n*, 245 N.C. 350, 95 S.E.2d 910 (1957) (representative of nonworking prisoner who was killed entitled to recover under Tort Claims Act). Plaintiff also cites precedent for the assertion that the Industrial Commission and courts have adjudicated prisoner tort claims for more than thirty years without distinguishing between prisoners negligently injured on prison jobs and other prisoners negligently injured. *Brewington v. N.C. Dep't of Correction*, 111 N.C. App. 833, 433 S.E.2d 798, *disc. rev. denied*, 335 N.C. 552, 439 S.E.2d 142 (1993); *Baker v. N.C. Dep't of Correction*, 85 N.C. App. 345, 354 S.E.2d 733 (1987). We find these cases inapplicable to the case at hand.

The case of *Gould* is distinguishable because it dealt with the death of a nonworking prisoner and did not address workers' compensation. The essence of the *Gould* decision was that nonworking prisoners could sue under the Tort Claims Act. That ruling is still good law, but it has no application to the case of a working prisoner injured at work.

The next case in time cited by plaintiff is *Lawson*. *Lawson* also involved the death of a prisoner, but this time while working for the State. There the Court noted that section 97-13(c) conferred workers' compensation benefits upon the special class of prisoners who were injured while working for the Department of Transportation but not other prisoners. *Lawson*, 248 N.C. at 280, 103 S.E.2d at 369. The *Lawson* Court went on to say, "In *Gould* . . . , this Court held that a prisoner not in said special classification was entitled to recover under the Tort Claims Act." *Id.* At that time, however, section 97-13(c) did not grant compensation to prisoners killed on the job. Neither did the exclusivity provisions of section 97-10 apply to prisoners in the same manner as other employees. *Id.* (applicable portion of section 97-13(c) added by 1957 General Assembly). Thus, Lawson's next of kin were permitted to seek recovery under the Tort Claims Act. *Id.* at 280-81, 103 S.E.2d at 369-70.

*Ivey* is similarly distinguishable. Section 97-13(c) was amended in 1971 to provide full workers' compensation benefits for injured and

killed prisoners. *Ivey* was a pre-1971 amendment case of a prisoner killed while working. At that time, section 97-13(c) applied to both injured and killed prisoners, but provided only burial expenses for those who died. *Ivey*, 252 N.C. at 618, 114 S.E.2d at 814. The Court in *Ivey* held that burial expenses did not meet the applicable definition of compensation. *Id.* at 620, 114 S.E.2d at 815. Because only prisoners "entitled to compensation" were barred by section 97-13(c) and former section 97-10, the statute did not bar tort claims arising from the death of a prisoner. *Id.* We agree with the Court of Appeals that, "[s]ince *Ivey* was a pre-1971 amendment death case in which the dead prisoner was not entitled to workers' compensation, its holding does not apply to plaintiff who is an injured employee who may elect to pursue compensation under the present version of the Workers' Compensation Act." *Richardson v. N.C. Dep't of Correction*, 118 N.C. App. 704, 706, 457 S.E.2d 325, 327 (1995).

The cases of *Brewington* and *Baker* are similarly inapposite. Neither of these cases addressed directly the issue of whether a working prisoner was precluded from filing a tort claim, and thus they are not instructive to the issue at hand.

At the time *Gould, Lawson* and *Ivey* were written, section 97-13(c) did not provide for the payment of compensation under the particular circumstances of these cases. Accordingly, the courts held that the statute did not preclude suit under the Tort Claims Act. Now, with the statutory amendments and the absolute right to compensation, there is no basis for interpreting the statute as giving a prisoner the option to sue under the Tort Claims Act or for workers' compensation benefits.

The fact that the worker is incarcerated and recovery under workers' compensation is deferred until discharge is not relevant to the issue of remedy. First, the primary purpose of workers' compensation is to compensate injured employees for their loss of earning capacity at approximately their present standard of living, not to compensate for pain and suffering. Leonard T. Jernigan, Jr., *North Carolina Workers' Compensation* §§ 1-1 to -2 (2d ed. 1995). Prisoners have all of their daily needs met while in prison. Since they do not have to purchase these on the open market with what otherwise would be their earned wage like other workers, prisoners have no need for immediate compensation. The statutory discharge rule merely sets forth the premise that a prisoner, who by operation of law does not have the right to earn wages, should not have the right to

receive payments made in lieu of wages. Second, the deferment of compensation until discharge rule does not act as a bar against remedy. When the prisoner is released, he is entitled to compensation if he is still disabled.

Plaintiff further argues that the use of the word "may" in section 97-13(c) gives injured working prisoners a choice of pursuing claims under either the Workers' Compensation Act or the Tort Claims Act. We find this argument unpersuasive. Section 97-13(c) states that the exclusive remedy provision of section 97-10.1 "*shall* apply to prisoners . . . entitled to compensation." N.C.G.S. § 97-13(c) (emphasis added). The use of the word "may" merely establishes that plaintiff is permitted to file a workers' compensation claim. It cannot reasonably be construed as granting plaintiff the option to choose his remedy.

[2] Plaintiff further contends that the limitation of working prisoners to workers' compensation as their exclusive remedy constitutes a violation of the right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution. Plaintiff argues that such a holding violates equal protection rights in two ways: (1) by discriminating between working prisoners and nonworking prisoners, and (2) by discriminating between working prisoners and other employees. Plaintiff asserts that these are similarly situated classes of people and that such distinctions do not bear a rational relationship to a legitimate governmental interest and thus violate the Equal Protection Clause. We find this argument to be without merit.

The principle of equal protection of the law is explicit in both the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Constitution of North Carolina. *S.S. Kresge Co. v. Davis*, 277 N.C. 654, 660, 178 S.E.2d 382, 385 (1971). This principle requires that all persons similarly situated be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216, 72 L. Ed. 2d 786, 798 (1982). Our courts use the same test as federal courts in evaluating the constitutionality of challenged classifications under an equal protection analysis. *Duggins v. N.C. State Bd. of CPA Examiners*, 294 N.C. 120, 131, 240 S.E.2d 406, 413 (1978). If the statute does not impact upon a suspect class or a fundamental right, it is necessary to show only that the classification created by the statute bears a rational relationship to some legitimate state interest. *State ex rel. Util. Comm'n v. Carolina Util. Customers Ass'n*, 336 N.C. 657, 681, 446 S.E.2d 332, 346 (1994).

**RICHARDSON v. N.C. DEPT. OF CORRECTION**

[345 N.C. 128 (1996)]

Under the rational basis test, statutes "come before the Court with a presumption of validity." *In re Assessment of Use Taxes Against Village Publishing Corp.*, 312 N.C. 211, 221, 322 S.E.2d 155, 162 (1984), *appeal dismissed*, 472 U.S. 1001, 86 L. Ed. 2d 710 (1985). The court "need only determine if the classification's relation to the objectives sought by the General Assembly attains a minimum level of rationality. As long as there exist reasonable facts on which the legislature *could* have relied in creating the classification, we will not interfere with the legislature's decision." *Powe v. Odell*, 312 N.C. 410, 414, 322 S.E.2d 762, 764 (1984) (emphasis added). Thus, a statutory classification survives this assault if it bears " 'some rational relationship to a conceivable legitimate interest of government.' " *In re Assessment*, 312 N.C. at 221, 322 S.E.2d at 162 (quoting *White v. Pate*, 308 N.C. 759, 766-67, 304 S.E.2d 199, 204 (1983)).

Without regard to whether plaintiff has shown the classes designated to be similarly situated, there are numerous legitimate governmental interests that are rationally addressed by the exclusive remedy effect of sections 97-13(c) and 97-10.1. Among them are: (1) suspending compensation to prisoners during incarceration because their needs are met by the State, (2) limiting the liability of the State in the same way as that of private employers by tying compensation to wages, and (3) protecting the exclusiveness of workers' compensation as a remedy by treating work-injured prisoners the same as work-injured private employees.

Furthermore, the differential impact between working and nonworking prisoners mirrors the effect of workers' compensation upon private individuals injured at work and those who are injured elsewhere. People injured at work are limited to workers' compensation, whereas those injured elsewhere are excluded from workers' compensation but can sue in tort. The United States Supreme Court and this Court have held that limiting avenues of remedy for workers through workers' compensation is a valid exercise of the police power and does not violate the Constitution. *Mountain Timber Co. v. Washington*, 243 U.S. 219, 239, 61 L. Ed. 685, 697 (1917) (workers' compensation "legislation which, in carrying out a public purpose, . . . affects alike all persons similarly situated, is not within the [Fourteenth] Amendment"); *Heavner v. Town of Lincolnton*, 202 N.C. 400, 162 S.E. 909, *appeal dismissed*, 287 U.S. 672, 77 L. Ed. 2d 579 (1932). Just as the limiting of remedies is not violative of the Constitution with regard to differential treatment of work-injured and nonwork-injured citizens, likewise the limitation of remedies to

work-injured prisoners as opposed to nonwork-injured prisoners is not violative.

Much of plaintiff's equal protection argument centers on the alleged insufficiency of the wage-based benefits an inmate receives. This argument is lacking in two respects. First, it fails to consider the value of the full benefits granted to an injured prisoner while incarcerated and the benefits afforded under workers' compensation after discharge over and above the wage benefit. While in prison, all of the inmate's personal and medical needs are paid by the State. After discharge, workers' compensation provides medical care and vocational training to prepare the worker for another job field. These medical and vocational benefits may, over the course of a lifetime, amount to far more than the $150,000 allowed under the Tort Claims Act for some prisoners. Some injured prisoners are better served under workers' compensation, and some are not. However, this variance is not unique to prisoners; it applies equally to nonprisoners. As such, there is no equal protection violation. The plaintiff urges this Court to allow working prisoners to elect between workers' compensation and tort. This would place them in a position not equal with the noninmate worker, but rather in a superior position. Such a result would be untenable.

Second, plaintiff's argument ignores the fact that all employees/workers receive differential wage benefits based on their earnings at the time of injury. Poorly paid workers get lower wage-based compensation payments than do better paid workers. The employee who unfortunately breaks his leg while working at a weekly Saturday-only job has his compensation calculated upon his average weekly wage from that job, not his regular forty-hour-a-week employment. *See Joyner v. A.J. Carey Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966). This may create a hardship disparity, but it is the result of a statute that treats all persons so injured *the same*. This is hardly an equal protection violation. By virtue of their choice to break the law, prisoners have placed themselves in the position of receiving a lower wage than they would be afforded in civil society. Thus, it is appropriate that they should bear the natural consequences of that decision in terms of workers' compensation benefits. `

Finally, plaintiff asserts that the exclusivity provisions of the Workers' Compensation Act in sections 97-13(c) and 97-10.1 contravene sound public policy by lowering the incentive for prisons to provide safe working conditions for prisoners. We disagree with this

view. All other workers are restricted to workers' compensation remedies, and there is no evidence that this leads to more dangerous working conditions. If anything, the guaranteed recovery increases the incentive for employers to be safe. Also, like all other employers, prisons are subject to regulatory oversight and the close scrutiny of advocacy groups concerned with such issues. Moreover, under *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), prisoners still have the right to sue the Department of Correction directly if misconduct rises to the level of generating a substantial certainty of injury to the worker. This provides protection against, and incentive not to create, dangerous working conditions for prisoners.

For the above stated reasons, we conclude that the exclusive source of remedy for a prisoner injured while working is through the Workers' Compensation Act, and accordingly we affirm the Court of Appeals.

AFFIRMED.